Filed 2/27/15  P. v. McCloud CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>IZAC MCCLOUD,<br><br>    Defendant and Appellant. | B251262<br>(Los Angeles County<br>Super. Ct. No. BA331910) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mark C. Kim, Judge.  Affirmed, modified, and remanded with directions.

_____

Chris R. Redburn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews, Victoria B. Wilson, and Mark E. Weber, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Izac McCloud appeals following a resentencing on remand after a previous appeal. We modify his sentence in light of a recent statute concerning parole eligibility for juvenile offenders, and we direct the trial court to correct a clerical error in the abstract of judgment, but we otherwise affirm.

BACKGROUND

Our opinion in the previous appeal sets forth the factual and procedural background in detail (see *People v. McCloud* (2012) 211 Cal.App.4th 788), and we need not repeat it here. The charges arise from the firing of 10 shots at a crowded party at which hundreds of people were present; two people were killed and a third was wounded. McCloud was convicted of two counts of second degree murder and 46 counts of assault with a firearm. (*Id.* at p. 792.) He was sentenced to 202 years to life in state prison. (*Ibid.*)

On appeal, we affirmed McCloud's murder convictions but reversed 38 of his 46 convictions for assault with a firearm. (*McCloud*, *supra*, 211 Cal.App.4th at p. 808.) We also vacated his sentence and remanded for further proceedings. (*Ibid.*)

On remand, the trial court conducted a sentencing hearing, at which the prosecution elected to proceed with the assault charges on only counts 3, 10, 11, 12, 26, 36, 47, and 48. The court sentenced McCloud to 113 years and 4 months to life in state prison, calculated as follows: on count 1 (murder), 15 years to life, plus 25 years to life for the firearm enhancement; on count 2 (murder), 15 years to life, plus 25 years to life for the firearm enhancement; on count 3 (assault with a firearm), the high term of 4 years, plus 10 years for the firearm enhancement, plus 3 years for the great bodily injury enhancement; on counts 10, 11, 12, 26, 36, 47, and 48 (assault with a firearm), 1 year (one-third of the mid-term), plus 16 months (one-third of the mid-term) for the firearm enhancement; all sentences to run consecutively. The court dismissed the remaining counts. McCloud timely appealed.

DISCUSSION

I.   Sufficiency of the Evidence

McCloud argues that his convictions for assault on counts 10, 11, 12, 26, 36, 47, and 48 must be reversed because the record contains insufficient evidence that he possessed the present ability to commit a battery on the victims named in those counts.[1] Respondent contends that McCloud's argument is barred by the law of the case, and we agree.  In the previous appeal, McCloud argued that there was insufficient evidence of present ability as to all of the assault counts other than count 3.  In a nonpublished part of our opinion, we expressly considered and rejected his argument.  (*People v. McCloud* (Dec. 5, 2012, B228209) [nonpub. opn.].)  We therefore must reject it now as well.  (See generally 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 470.)  McCloud argues that the issue presented on this appeal "only ripened and could be briefed after the trial court selected the seven counts" for resentencing on remand, and that our prior opinion consequently did not decide "whether substantial evidence supported the convictions on these particular counts."  We disagree.  In the previous appeal, McCloud argued that the evidence of present ability was insufficient as to every assault count except count 3, because the prosecution did not show which victims the shooter had the present ability to assault.  (*People v. McCloud* (Dec. 5, 2012, B228209) [nonpub. opn.].)  We rejected the argument and therefore must reject it now as well.

II.   Cruel and Unusual Punishment

McCloud argues that his sentence of 113 years and 4 months to life in prison is the functional equivalent of life without the possibility of parole.  He further argues that because he was only 16 years old at the time of the charged offenses, such a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States.  We agree but conclude that Penal Code section 3051 cures the constitutional violation.

---

[1]   The victim named in count 3 (i.e., the one assault conviction that McCloud does not challenge) was the individual who was wounded but not killed.

3

The Eighth Amendment's prohibition on cruel and unusual punishment prohibits punishment that is grossly disproportionate to the offender's culpability. (U.S. Const., 8th Amend.) In the context of juvenile offenders, because they "cannot with reliability be classified among the worst offenders," categorical rules have developed to prevent the imposition of disproportionate punishment. (*Roper v. Simmons* (2005) 543 U.S. 551, 569.)

In *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*), the Supreme Court held a nonhomicide juvenile offender may not be sentenced to life without parole (hereafter LWOP). (*Id.* at p. 74.) The Court required juvenile offenders be given "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" absent exceptional circumstances. (*Id.* at p. 75.)

In *Miller v. Alabama* (2012) 132 S.Ct. 2455 (*Miller*), the Supreme Court prohibited sentencing a juvenile homicide offender to mandatory LWOP and required the sentencing court to consider the mitigating qualities of youth, including: (1) age and its hallmark features such as immaturity, impetuosity, and failure to appreciate risk and consequences; (2) family and home environment; and (3) circumstances of the homicide offense, including the extent of participation and familial or peer pressure. (*Id.* at pp. 2467-2468, 2475.)

Following *Graham* and *Miller*, in *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), the California Supreme Court prohibited a term-of-years sentence that amounts to the "functional equivalent" of LWOP for juvenile nonhomicide offenders. (*Id.* at pp. 267-268.) The court explained the Eighth Amendment requires that at sentencing, a juvenile nonhomicide offender must be provided with "a meaningful opportunity to demonstrate their rehabilitation and fitness to reenter society in the future," and "the sentencing court must consider all mitigating circumstances attendant in the juvenile's crime and life, including but not limited to his or her chronological age at the time of the crime, whether the juvenile offender was a direct perpetrator or an aider and abettor, and his or her physical and mental development." (*Id.* at pp. 268-269.)

4

In the wake of these recent cases, "[t]he issue of how long someone under the age of 18 may be sentenced to prison has been the subject of considerable judicial attention." (*People v. Perez* (2013) 214 Cal.App.4th 49, 55.) A long sentence with eligibility for parole will be constitutional "if there is some meaningful life expectancy left when the offender becomes eligible for parole." (*Id.* at p. 57, italics omitted [no case has struck "down as cruel and unusual any sentence against anyone under the age of 18 where the perpetrator still has substantial life expectancy left at the time of eligibility for parole"].)

In response to *Graham*, *Miller*, and *Caballero*, the Legislature enacted Senate Bill No. 260 (Sen. Bill 260) to establish Penal Code section 3051 addressing juvenile sentencing concerns, effective January 1, 2014. Section 1 of Senate Bill 260 states in relevant part: "The Legislature finds and declares that, as stated by the United States Supreme Court in [*Miller*], 'only a relatively small proportion of adolescents' who engage in illegal activity 'develop entrenched patterns of problem behavior,' and that 'developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds,' including 'parts of the brain involved in behavior control.' The Legislature recognizes that youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society. The purpose of this act is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with the decision of the California Supreme Court in [*Caballero*] and the decisions of the United States Supreme Court in [*Graham*] and [*Miller*]." (Legis. Counsel's Dig., Sen. Bill No. 260 (2013-2014 Reg. Sess.) § 1, pp. 2-3.) The Legislature declared its intent "to create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established." (*Ibid.*)

5

Penal Code section 3051 provides in pertinent part that subject to inapplicable exceptions, "[a] person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is a life term of 25 years to life shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions." (Pen. Code, § 3051, subds. (b)(3), (h).) "The youth offender parole hearing to consider release shall provide for a meaningful opportunity to obtain release" and "take into consideration the diminished culpability of juveniles as compared to that of adults, the hallmark features of youth, and any subsequent growth and increased maturity of the individual." (Pen. Code, § 3051, subds. (e) & (f)(1).)

Court of Appeal opinions have taken conflicting views concerning the effect of Penal Code section 3051, and the issue is currently before the Supreme Court in several cases. (See, e.g., *In re Alatriste*, review granted Feb. 19, 2014, S214652; *In re Bonilla*, review granted Feb. 19, 2014, S214960.) In our view, Penal Code section 3051 as applied to McCloud's sentence satisfies the constitutional mandates articulated in *Graham*, *Miller*, and *Caballero*. Under Penal Code section 3051, McCloud will receive a parole hearing in his 25th year of incarceration, at the age of 42. At his parole hearing, the Board of Parole Hearings will "take into consideration the diminished culpability of juveniles as compared to that of adults, the hallmark features of youth, and any subsequent growth and increased maturity of the individual" in considering McCloud's release. (Pen. Code, § 3051, subds. (e) & (f)(1).) Section 3051 thus provides McCloud with a meaningful opportunity to obtain release based on demonstrated growth and rehabilitation by affording him his first parole hearing well within his life expectancy. Therefore, under the new legislation, McCloud's sentence is not the functional equivalent of LWOP. Without a sentence that amounts to the functional equivalent of LWOP, no harm exists that constitutes cruel and unusual punishment under the Eighth Amendment.

We therefore conclude that under Penal Code section 3051, which affords McCloud the opportunity for a parole hearing in his 25th year of incarceration,

6

McCloud's sentence will satisfy the constitutional requirements of *Graham*, *Miller*, and *Caballero* because he will receive his first opportunity for parole well within his life expectancy. However, we must ensure a defendant receives a constitutional sentence at the time of sentencing. (See *Caballero*, *supra*, 55 Cal.4th at p. 268.) Accordingly, out of an abundance of caution, we will modify his sentence to include a minimum parole eligibility date of 25 years. We can thus conclude with certainty that McCloud has been provided with a sentence that passes constitutional muster.

III.    Other Sentencing Issues

McCloud argues that the trial court erred by failing to consider certain factors articulated in *Miller*. We disagree. Under *Miller*, the factors at issue (all relating to the defendant's youth) must be considered "in determining the appropriateness of a lifetime of incarceration without the possibility of parole." (*Miller*, *supra*, 132 S.Ct. at p. 2465.) In light of Penal Code section 3051, McCloud's sentence is not the functional equivalent of LWOP, so *Miller* did not require the trial court to consider those factors.

On a related point, McCloud argues that the trial court erred by failing to order a new probation report. But in reply to respondent's contention that any such error was harmless, McCloud's only argument is that "[p]rejudice is shown in this case because none of the *Miller* factors was established or investigated, resulting in a violation of the Eighth Amendment." We have already concluded, however, that *Miller* did not require the trial court to consider those factors, so McCloud's argument concerning the prejudicial effect of failure to order a second probation report fails as well. In addition, McCloud has not identified any material information that was omitted from the original probation report but could have been included in a supplemental report if one had been ordered.

McCloud also argues that, at the resentencing hearing on remand, the court erred by failing to state its reasons for imposing consecutive sentences. We conclude that McCloud has again failed to show prejudice, for two reasons. First, when the trial court sentenced McCloud the first time (before his previous appeal), the court stated its reasons for imposing consecutive sentences, and McCloud does not articulate any reason why

7

there was a reasonable probability that the court's reasoning would have been different at resentencing on remand.  Second, even if the court had imposed concurrent sentences, by McCloud's own calculation he would have been sentenced to 40 years to life.  But under Penal Code section 3051, he is eligible for parole in his 25th year of incarceration.  McCloud does not explain how, given the operation of Penal Code section 3051, the imposition of consecutive sentences prejudiced him.

Finally, McCloud argues that his trial counsel rendered ineffective assistance by failing to raise these issues (the *Miller* factors, a new probation report, and reasons for consecutive sentences) at the resentencing hearing.  Because we have already concluded that McCloud's arguments on those issues fail on the merits, we reject the ineffective assistance claim as well.

IV.     Clerical Error

Respondent contends that the abstract of judgment incorrectly states that in counts 1 and 2 McCloud was convicted of assault with a firearm.  We agree.  When the new abstract of judgment is prepared, it should reflect that in counts 1 and 2 McCloud was convicted of second degree murder.

DISPOSITION

McCloud's sentence is modified to reflect that he shall be entitled to a parole hearing after serving 25 years in prison.  The clerk of the trial court is directed to prepare a new abstract of judgment with this modification and also reflecting that McCloud was convicted of second degree murder on counts 1 and 2.  The clerk shall send a certified copy of the new abstract of judgment to the Department of Corrections and rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


                                                    ROTHSCHILD, P. J.

We concur:



        JOHNSON, J.



        BENDIX, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9